Mr. Ruiz was wrongly convicted based on the erroneous admission of evidence under Federal Rule of Evidence 404B in this case, and that evidence is generally analyzed by this Court under a four-part test. The first part of that test is a common-sense rationale that the evidence tends to prove a material point in the case, and this evidence fails to meet, as well as the fourth prong, this prong in particular. In this case, it was Mr. Ruiz's defense that he was not the driver of the car that had actually transported the undocumented people in this case. His defense was not one of mistake or lack of knowledge. His defense was this was the wrong car. Independent of whether that's his defense, wasn't it still the government's obligation to prove knowledge? It was, but this evidence didn't tend to prove that, and for a variety of reasons. It doesn't show the knowledge of this prior offense, and I do want to sort of, and I don't mean to move away, but I want to dovetail this with the fourth element, which is a similarity. It's a very different offense. I know statutorily he was convicted of transportation in both instances. However, that prior offense was in 2022. It was really a bring-to offense under the 1324 statute, and it's commonized to practice in Southern District for those cases to be resolved via plea agreement to the transportation. It doesn't carry the same minimum mandatory penalties as the bring-to, and that was that  The prior offense was very different factually. That was offense where Mr. Ruiz was convicted of bringing two minors to the port of entry, lying about their status, and attempting to have them enter. So his knowledge of those two individuals' immigration status doesn't prove a material point in this later prosecution where the defenses were these people even in the car. Never disputed that the people were undocumented in the present case. Never disputed that they were in a car. The dispute was whether it was his car that he drove. So it's very different. Again, I, but maybe I'm missing your response here, but it seems like both offenses required him to prove knowledge, required the government to prove that knowledge that the people in the vehicle were illegal aliens, right? I mean. Who were undocumented.  Yes. That is true. That needs to be proved. But this evidence doesn't prove that, and I would point this court to two of its prior decisions where Rendon Duarte is a case where the defendant there was charged with illegal The evidence at trial that was presented under 404B was that he had been arrested in a car and there had been guns in that car before, and the government's argument was the same as the court's question today, which is, isn't the government required to prove knowledge? Doesn't this, in fact, prove that knowledge? And the answer from this court in that case was no. Ultimately, I think there was other overwhelming evidence and that defendant wasn't convicted, but this court has in subsequent decisions found similar evidence. I think the Schramm case in 2018 from this court proved that in similar situations, when the evidence is a little closer, that that does warrant reversal. This court also made a similar finding in Darrington, and in that case, it was the same sort of situation where the defendant was charged with illegally cutting down forestry. He had a prior incident of cutting down some forestry that he knew was on government land. The government in that case made the same argument, isn't this relevant to prove knowledge? This court found that it wasn't, it didn't prove that material point. In terms of the prejudice in this case, I would say the evidence here wasn't overwhelming. The undocumented people were not found in Mr. Ruiz's car. The sort of star witness, the material witness in this case that was allegedly sitting behind the driver in the car in which he drove, he testified he wasn't able to identify Mr. Ruiz. The foot guy in this case, common in these types of cases, had a WhatsApp chat with the person that he was supposed to pick up. The government presented cellular phone evidence but couldn't link that to Mr. Ruiz. So this isn't a case like some of those other cases in this court where the evidence is overwhelming and there's no reason to overturn the conviction. The law enforcement officers saw the white car pull off of the shoulder and then followed that and your client was in that car. Correct. And then they went back to the spot where they had seen the white car pulled over and there were footprints leading away from that location, right? Correct. And they followed those footprints and found the undocumented aliens. True. And I think there was also testimony that this is a common area for cars to stop to do that, that this is a common thing. It could have been any one of many cars that transverse this very busy highway. So I think with that I would reserve the rest of my time for rebuttal unless the court has further questions. Okay, thank you. Good morning. May it please the court. Peter Horn for the United States. The district court here did not abuse its discretion in admitting evidence of Ruiz's prior alien smuggling conviction at his trial. First, the evidence was relevant to material points, including the defendant's knowledge. It was admissible under 403 and the district court took all appropriate steps to mitigate any unfair prejudice. And finally, even if this court were to find some error, it was harmless in light of all the other independent and extensive evidence showing Ruiz's guilt. On the 404B requirements, this went to material points and in particular the defendant's knowledge because it helped to show that he knew what he was doing on the road that day. A couple miles from the border, relatively remote highway, and failing to yield to law enforcement for miles. It also helped to show a lack of accident or mistake, that it wasn't just a coincidence, that it was him and his car just yards away from the aliens who were running away from it and ultimately found. This is the type of evidence that this court has routinely approved in alien smuggling cases and it was properly admitted here too. On the second requirement briefly, it was not too remote in time, 16 months is well within the parameters this court has set and there's no bright line rule on that. Also in Ruiz's particular case, it really couldn't have been any closer when he in fact was still serving part of his sentence at a re-entry center at the time he committed this offense. There's more than sufficient evidence to show that he committed it with the undisputed conviction documents and the party stipulation. In this court, going to Ruiz's counsel's point about the similarity, this court hasn't required similarity when the evidence goes to a defendant's knowledge. Even if this court does look to that, to the extent it does, these offenses are more than similar enough. So what exact knowledge would this prior conviction help to prove in the government's view? What's the exact bit of knowledge that you think this is relevant to? That he was knowingly transporting people and he was knowingly transporting aliens and he was doing so for money and there was evidence of the payment that came out in both cases as well. And so that given the facts of this case where he's... But isn't that just to say that you think the fact that he committed that prior offense makes it more likely that he acted the same way here? That sounds like, when you describe it that way, it sounds like propensity. Well, it's not. What it helps to show is that with him being the driver of the car, car riding low in this area, not yielding to law enforcement, and then aliens are found within yards, 50 yards from where they're running away from the car, that as a converse, it wasn't just an accident, but he knew what he was doing there. And what he was doing and why he was acting that way is because he was driving people illegally. And his prior commission of that helps to show that he knew what it meant, he had done it before, to transport people illegally into or within the United States. And as to mistake or lack of accident, sort of the converse of that is, again, that it wasn't just by chance, it wasn't just a coincidence that he was there and within yards of those people, but it's because he was transporting them. And as Gomez, the guy who testified, he had told them to get out once they were pursued. Told them to get down and then get out. On similarity, just to address that briefly, again, this court hasn't required it, but in both of these cases, this isn't just to show propensity, but they're more than similar enough, with Ruiz being the driver of the car, with the aliens inside of it, at or near the border, and in both cases for payment. Under 403... Could any of the aliens identify him as the driver at the trial? Did any of them say, yeah, that's the guy? They did not. So Gomez was the only one of them who testified at trial. He was separately prosecuted as a guide. There was a stipulation as to the other material witnesses who did not testify at trial. There wasn't a particular identification from them. But three of the four Border Patrol agents who testified at trial did identify Ruiz as the driver, the driver of the Civic, who they followed and apprehended that day. Although that was based on the identification they did when they pulled him from the car. They hadn't identified him earlier in the chase, right? That's correct. One of the agents testified about the neck tattoos he had seen earlier in the chase and identified the same tattoos on Ruiz. Ultimately, it came from when they arrested him at the end of the chase, though. So if the countervailing story is this car just happened to be pulled off at the shoulder there, another white car dropped off the aliens, and then this white car pulled off the shoulder, the fact that they could identify him from the later stop wouldn't really respond to that counter story? Theoretically. I see Your Honor's point. And that's possible. That wasn't a particular defense or argument made at trial. But again, the fact of Ruiz's prior conviction helps to show that it was him in the car at the beginning and the end, and he knew what he was doing with the aliens in the car at that point. Just briefly on 403, as to unfair prejudice, the district court really did everything it could to minimize any unfair prejudice. There were cautionary instructions throughout the trial, during opening statements, when the evidence was admitted, and in final instructions. And of course, the government in closing also referred to those instructions, and the what were sanitized conviction documents were not allowed to go back into the jury room. So the evidence was properly admitted, and there was no abuse of discretion under 403. And then briefly to address harmlessness, there was a lot of independent evidence of Ruiz's guilt. That included the testimony of multiple Border Patrol agents who identified Ruiz, talked about the circumstances of location of his car, the circumstances of the pursuit. There was Gomez who, I don't know if it's fair to say he was a star witness, but he was a guide who talked about going to bring that group into the United States, to that area of the road, looking for a white car, and what the driver, Ruiz, told them during the pursuit, which was to get down, get out after 20 or 30 minutes. And all that evidence was corroborated by his own text messages, which showed, in fact, the group was looking for a white car, a white Honda, and in that area, based on GPS coordinates. That's more than enough to convict Ruiz. And even if the court would like... So before the car pulled off, it disappeared for a couple minutes, and then they reacquire it, it's pulled off on the side of the road, right? Before that time, had they seen a license plate or anything like that that would allow them to know that this is indeed the same car that we had been tailing before? There was. And there was agent testimony. And going to Your Honor's question a couple moments ago, that's correct. There was observation of a license plate at the outset, and agents actually ran the plates, checked the registration, determined the crossing history, and a release of liability, and it was the same car that they apprehended a while later. Unless the court has any other questions, I'd submit. Yeah. Good. Thank you. Thank you. We'll hear rebuttal. Just very briefly, Your Honor. Just a couple. One of the things I noticed in the briefs and in counsel's opening remarks, there was the reference to an abuse of discretion regarding the standard of review. Obviously, in our briefs, we are asking for a de novo review because, one, there's a constitutional issue, two, we don't think this is properly 404B, which is normally if something falls into 404B, it's not de novo, and then finally, there was no 403 balancing test. And I do, I know Judge Curiel, I've appeared before him many times. He's a careful judge, a good judge. In this case, though, I don't think he actually did a 403 analysis. What he did do was remove some of the factual accoutrement of this offense in terms of some fact that there were minors, it was a port of entry, in some ways harmful in the sense that it makes the offense seem more similar, but he didn't actually conduct, the court did not conduct a real 403 balancing test in terms of does this really meet the standard of admissibility. And I think that's particularly true because the court's initial ruling on this at the eliminating hearing was that this is important for knowledge. The government really didn't pick up, they've, to their credit, been consistent below. They argue this is for mistake or lack of accident, and they've argued that same argument in their briefs. But none of those terms were ever mentioned in the defense case. You could do a word search through those transcripts. That just wasn't an issue. It's just not an issue in this case. And I agree with the court's comments that by saying, I think government counsel said, this evidence is relevant because it shows he knew what he was doing. That's just an amplification of the propensity inference. This court, and I think it was Romero, had said, look, we understand as a matter of nuance that there's a fine line sometimes between evidence that fits under 404B and just straight propensity. It's this court's job to draw that line, and I would advocate for, in this case, this is that line where the evidence doesn't really prove his knowledge of something that's really not at issue in this case. So, counsel, I thought I'd understood you in your opening remarks to suggest that maybe there was another car that the aliens had gotten out of. Maybe I misunderstood, but it sounds like the license plate was seen before it was pulled over to the side of the road, and then the same license plate, your client was discovered to be the driver of that car when it was stopped, and there were footprints leading away from the side of the road. So I'm struggling to come up with what the counter story is here. My understanding of the counter story, Your Honor, to put it sort of in colloquial terms, is that there was a second car, and that the car that the undocumented people were in was not the same car subject to the plate reader. That's my understanding of this. And that is why the evidence of Mr. Ruiz's knowledge doesn't really matter in this case in terms of whether it's a mistake or an accident, because it's his defense that he's not the same car as that these people rode in. Where's the other car? We don't know. That's the whole point. That car is gone. That car's in the wind. And with that, I'd submit unless the Court has further questions. Thank you. Thank you very much, Your Honor. Thank you, counsel, for your arguments in the case. The case is now submitted.
judges: NELSON, VANDYKE, Cole